UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

KEITH RAAPPANA,

    Plaintiff,

    v.

INUI STEAMSHIP COMPANY, LTD.,

    Defendant.

Case No. C06-5586FDB

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

## BACKGROUND

The following brief recitation of facts comes from Plaintiff Raappana's deposition testimony or his admissions.[1] Plaintiff is a longshore worker of more than 40 years experience who was employed by stevedore Jones Oregon at the Port of Longview. On November 14, 2003, Raappana was operating a crane loading logs aboard the MV KEN ANN MARU, owned by Defendant Inui and under charter to Kawasho Corporation.

Plaintiff entered the crane through the ladder access inside the crane's pedestal (crane pedestal No. 1) and ascended to the crane cab. He reported no problems with the interior ladders nor with the lighting. When he finished operating the crane, he started to descend from the crane cab via the interior ladders, but after descending about ten feet, he realized that the lights were off in the crane pedestal. He described the crane pedestal below him as "pitch black" and "black all the way

---

[1] For convenience, see references in "Defendant's Concise Statement of Fact."

ORDER - 1

down." Plaintiff acknowledged alternatives to his continuing to descend into the dark: (a) descending via the exterior crane ladder or (b) returning to the crane cab and yelling for help, or, (c) as suggested by another longshore worker with 30 years experience in the industry, he could have returned to the crane cab and waited for someone to turn the lights back on (Dep. of Michael Hellem, 25:21 – 27:9.).

Raappana did not return to the cab to yell for help because he "[n]ever even thought about it." When Raappana realized all the crane pedestal lights were off, he chose to continue descending through the crane pedestal in the dark, lighting his way with a cigarette lighter.

When Raappana reached the bottom of the crane pedestal, he saw the door was closed and secured with devices called "dogs." He opened the securing dogs at the bottom of the door. To open the top securing dog, "I had to step up on a beam because it was up high to get enough pressure to open it. When I popped it open, I stepped off the beam and twisted my knee." (Raappana Dep. 34:23 – 35:1.)

## PARTIES' CONTENTIONS

Raappana alleges three items of negligence: (1) Failing to provide any or adequate lighting for the No. 1 crane pedestal; (2) Failing to adequately inspect the vessel to determine that existing lighting was properly functioning before turning over the vessel for stevedoring services; and (3) Failing to warn plaintiff or his employer of the inadequate lighting on the No. 1 crane pedestal.

Defendant Inui seeks a judgment of dismissal because as a matter of law it is not liable to Raappana, an expert and experienced longshore worker who chose to enter a dark, dangerous space rather than to take another, safer alternative.

## APPLICABLE LAW

Summary judgment is proper if the moving party establishes that there are no genuine issues of material fact and it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). If the moving party shows that there are no genuine issues of material fact, the non-moving party must go

ORDER - 2

beyond the pleadings and designate facts showing an issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). Inferences drawn from the facts are viewed in favor of the non-moving party. *T.W. Elec. Service v. Pacific Elec. Contractors,* 809 F.2d 626, 630-31 (9th Cir. 1987).

Summary judgment is proper if a defendant shows that there is no evidence supporting an element essential to a plaintiff's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). Failure of proof as to any essential element of plaintiff's claims means that no genuine issue of material fact can exist and summary judgment is mandated. *Celotex*, 477 U.S. 317, 322-23 (1986). The nonmoving party "must do more than show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

## DISCUSSION

While it is the duty of a shipowner to provide a reasonably safe vessel so that a reasonably competent worker can safely perform his tasks and to warn of non-obvious hazards, it is the duty of the stevedore – not the shipowner to provide adequate lighting. In *Landsem v. Isuzu Motors, Ltd.*, 534 F. Supp. 448, 451 (D. Or. 1982), *aff'd,* 711 F.2d 1064 (9th Cir. 1983), the plaintiff contended that the shipowner was negligent in failing to adequately illuminate the work area. In analyzing whether the shipowner had any duty with respect to the lighting in the plaintiff's work area, the Court first noted that "[w]hile the shipowner has a duty to warn the stevedore of hidden defects that, in the exercise of reasonable care, would be known to the shipowner, the lighting on a ship is not a hidden defect." *Id.* Moreover, even if the shipowner remained in active control of the lights on the ship, it is, nevertheless, the duty of the stevedore, not the shipowner, to provide adequate lighting. The Court then cited the pertinent statutory duty of the stevedore under the Safety and Health Regulations for Longshoring at 29 C.F.R. 1918.92.

In Raappana's case, the most pertinent section provides as follows:

**29 C.F.R. 1918.92(e) – Illumination**

Entry into darkened areas. Employees shall not be permitted to enter dark holds,

ORDER - 3

> compartments, decks or other spaces without a flashlight or other portable light. The use of matches or open flames is prohibited.

This standard has been applied in other cases. For example, in *Matthews v. Pan Ocean Shipping Co.*, 1992 U.S. Dist. LEXIS 3590, 1993 AMC 1168 (E.D. Pa. 1992), *aff'd*, 977 F.2d 568 (3d Cir. 1992), the District Court granted Defendant's motion for summary judgment where plaintiff longshore worker voluntarily entered the unlighted portion of a cargo hold after the vessel's crew moved the lighting to another area, 1993 AMC at 1170, and the Court of Appeals affirmed citing *Landsem*.

Raappana states in his declaration that "I could have climbed back up and tried to yell to workers on the deck below but they often can't hear me from up in the crane cab because of all the noise. There was no air horn or device like that to help me get their attention." This statement is unhelpful to Raappana because it implies that he at least sometimes yells at workers below and that there were workers present. He rejected using the exterior ladder, theorizing that they often have missing rungs and no protective cage, and he reasoned that he had a cigarette lighter to aid him in the dark interior of the crane pedestal. Thus, Raappana made a conscious decision to descend into the darkness, using his cigarette lighter as illumination, all in violation of the safety rule against entry into darkened areas.

The Supreme Court in *Scindia Steam Navigation Co. v. De Los Santos*, 451 U.S. 156 (1981) identified a vessel owner's duties to longshore workers on the vessel and stated:

> [A]bsent contract provision, positive law, or custom to the contrary ... the shipowner has no general duty by way of supervision or inspection to exercise reasonable care to discover dangerous conditions that develop within the confines of the cargo operations that are assigned to the stevedore. The necessary consequence is that the shipowner is not liable to the longshoreman for injuries caused by dangers unknown to the owner and about which he had no duty to inform himself.

*Id.* at 172.

Plaintiff argues that Defendant Inui Steamship violated its "active control duty" to avoid exposing workers to hazards under the active control of the vessel during the work in its task of

ORDER - 4

controlling vessel lighting and opening or shutting and dogging the vessel doors. But even if one assumes for the purposes of this motion that a member of the crew turned off the pedestal lights while Raappana was in the crane cab – and Inui admits this for purposes of this motion – the question of Inui's conduct in this regard is beside the point because it is Raappana's conduct on which we must focus. Raappana chose to descend into the darkened crane pedestal in violation of a safety rule, and he alone was in control of the situation. Indeed, Stevedore Foreman Michael Hellem stated it was common sense not to go down into a deep hole if there were no light on down there. (Hellem Dep. P 26 – 27.)

Raappana next argues that it was the duty of Inui to intervene to correct an unreasonably dangerous condition, that is, the conditions of the crane pedestal lights being turned off and the door at the base being shut. This argument fails as well, for as held in *Scindia,* it is not the shipowner's obligation to monitor the longshore work or work area; that is the stevedore employer's obligation: "[T]he legal duties placed on the stevedore and the vessel's justifiable expectations that those duties will be performed are relevant in determining whether the shipowner has breached its duty." 451 U.S. at 176. "Only where the judgment of the stevedore is 'obviously improvident' ... and this poor judgment either is known to the shipowner or reasonably should be anticipated under the circumstances does the shipowner have a duty to intervene." *Id.* at 180. Raappana's poor judgment under the circumstances could not reasonably have been anticipated by the shipowner who was entitled to expect that an experienced longshore worker would not violate his own safety rule and climb into a pitch black hole using a cigarette lighter to show the way.

Raappana also argues that Inui Steamship violated its "turn over" duty to turn over a reasonably safe vessel and to warn the stevedore or long shore worker of non-obvious hazardous conditions because "the tower for the # 1 crane had no emergency lighting, had no switch at the top for a crane operator to turn on the lights (as defendant has acknowledged), and a non-level exit path." (Plaintiff's Response p. 10.) This argument fails as an attempt to distract from the main issue

ORDER - 5

of Plaintiff's conduct and does not support a conclusion that Inui failed to turn over a reasonably safe vessel or to warn of non-obvious hazards. The lights in the crane tower were on when Raappana ascended to the crane, and when it came time for him to descend the crane tower, upon finding that it was dark, common sense at least should have prevailed against a decision to go forward with no illumination but a cigarette lighter. Moreover, none of the negligence complained of – lack of illumination, the door being closed and dogged – caused Raappana's injury, which occurred when "I stepped wrong off of the beam and twisted my knee." (Raappana Decl. ¶ 12.) Stepping wrong off the beam could as easily have occurred in a lighted tower as a dark one.

Raappana has conceded that the shipowner is not subject to the OSHA standards set forth in CFR Part 29, because they regulate only Plaintiff and his employer, and this Court so holds, as well.

There being no genuine issue of material fact, and Defendant Inui Steamship being entitled to judgment as a matter of law, Defendant's Motion for Summary Judgment will be granted.

NOW, THEREFORE, IT IS ORDERED: Defendant's Motion for Summary Judgment [Dkt. # 47] is GRANTED.

DATED this 28th day of August, 2008.

FRANKLIN D. BURGESS
UNITED STATES DISTRICT JUDGE

ORDER - 6